## Hahn v. City of Newport, et al.

(Decided April 24, 1917.)

### Appeal from Campbell Circuit Court.

1. Municipal Corporations—Police Power and Regulations—Public Health.—It is a legitimate exercise of the police power to provide reasonable regulations having for their object the preservation of the health of the citizen, and to this end to provide such reasonable regulations for the handling and sale of foodstuffs as will maintain or improve sanitary conditions.

2. Municipal Corporations—Police Power and Regulations—Sale of Fresh Meat.—Charters of cities of the second class as found in Kentucky Statutes, subsections 1, 7 and 8 of section 3058, expressly confer upon the city council of such cities the authority to regulate the sale therein of fresh meats, and an ordinance duly passed in the city of Newport, which is one of the second class, prohibiting the sale of fresh meats by retail from a vehicle in or upon the streets of the city is not unreasonable, arbitrary or discriminatory, and is a valid exercise of the police power conferred by the legislature upon such cities.

3. Municipal Corporations—Ordinances—Sale of Fresh Meat.—Such an ordinance is regulatory in its nature, although it prohibits the sale of such commodity in a particular manner which is shown to be one that is unsanitary and detrimental to the health of the citizen, as mere regulations alone are necessarily prohibitive of some features of the conducting of the particular business attempted to be regulated.

4. Municipal Corporations—Police Power—Ordinance.—Neither a statute nor an ordinance is invalid because it is aimed at only a part of existing vices and does not include all of them, pro-

vided that the supposed vices and the attempted regulation are such as the law-making authority had a' right to make.

COURTLAND T. BAKER for appellant.

BARBOUR & BASSMAN and BRENT SPENCE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This litigation challenges the validity of an ordinance passed by the board of commissioners of the city of Newport, Ky., which, omitting its title and the section providing for a penalty for its violation, is as follows:

"That it shall be unlawful to sell meats in retail quantities from a wagon or vehicle within or upon the streets of the city of Newport."

The second section provides a penalty for a violation thereof of a fine not exceeding $10.00 and the costs of the prosecution.

The appellant (plaintiff below) in his pleading drawing the validity of the ordinance in question, after stating that he was engaged in retailing fresh meat from a one-horse wagon, operated on the streets of the city of Newport, and that he had theretofore obtained a license authorizing him to sell fresh meat in the city, as required by another and separate ordinance, says:

"Plaintiff says that said ordinance is invalid in that the subject of the ordinance is not expressed in the title; that said ordinance is invalid because it is arbitrary, unreasonable, unnecessary, oppressive, unduly discriminatory, monopolistic and confiscatory; because it is a gross abuse of the police power, and confers exclusive privileges upon all other meat dealers not embraced in said ordinance, and because it deprives plaintiff of his property without due process of law, and that said ordinance is in contravention of Article 14 of the amendment of the Constitution of the United States of America and of the Bill of Rights of the Constitution of Kentucky."

A demurrer filed to the petition was overruled, followed by an answer putting in issue all the allegations attacking the validity of the ordinance, and upon proof heard the court upheld the validity of the ordinance as a valid exercise of the police power and dismissed the petition, from which the plaintiff prosecutes this appeal.

We need spend no time upon the challenge made to the sufficiency of the title to the ordinance, as that question seems to have been abandoned, not being urged before

us, and if it were otherwise it is perfectly apparent that there is no merit in the contention, as the ordinance appears to be in strict conformity to its title.

The only testimony adduced in behalf of appellees, who were defendants below, is that of the city physician, who, according to his testimony, is an expert as well as a highly qualified physician, and eminently qualified to testify concerning the matters about which he was questioned. He was asked and answered question number six in his deposition, which is: "Q. State what, in your opinion, would be the probable effect upon the health of the community if persons were permitted to retail and sell fresh meats from wagons, and why the effect would follow A. In my opinion it would be unsanitary, and a germ breeder, and my reason for saying it is a germ breeder is because flies lighting on the meat, and dust blowing on it would be one of the best things to carry typhoid fever." In other parts of his testimony he shows (which is a matter of common knowledge) that in cities of the size and population of those belonging to the second class the dust from the streets is much more liable to be contaminated with unhealthy germs than in less populated sections, and that the producing cause for this is also more calculated to attract quantities of flies than in the sparsely settled communities. From his testimony there can be no doubt that, to say the least of it, the selling of fresh meats in the manner sought to be prohibited by the ordinance in such localities is calculated to render it unwholesome, unhealthy and productive of disease to those who consume it. The preservation of the public health as a part of the functions of the law-making body under the exercise of the police power has from time immemorial been recognized. In 28 Cyc. 709, speaking upon this precise point, it is said:

"The preservation of the health of the population is uniformly recognized as a most important municipal function; and the power to adopt and enforce sanitary regulations appropriate to this end is inherent in a municipality. Congested populations tend to breed disease as well as disorder, and since health, as well as order, is an essential condition of good living, and one of the primary purposes of municipal incorporation, sanitary powers may not only be expressly conferred by the charter, or implied therefrom, but they have been judicially declared to be inherent in a municipality as a necessary attribute thereof, and are favored in American courts."

The quotation is broad enough to include many matters upon which the municipality may legislate which legislation has for its purpose the maintenance of the health of its inhabitants. It is scarcely probable that any particular matter could have a more direct influence upon this object and purpose than that pertaining to the sanitary handling of food. In substantiation of this, in the same volume of Cyc., page 734, it is said:

"Accordingly in the exercise of its authorized police power a municipality may by ordinance prohibit hawking and peddling of meat, game, and poultry; the sale of adulterated or impure milk, skim milk, or milk from cows fed on still slops; of oysters away from oyster stands; of any unwholesome food; of short-weight bread; of less than a quarter of meat outside of market stalls; the peddling of fruits or vegetables anywhere between five o'clock a. m. and one o'clock p. m.; or at any time within six squares of a public market; any sale of corn or food outside of the market, or of uninspected or untagged meat; the sale of anything but fruit by keepers of fruit stands within two thousand one hundred feet of the market; the sale of cider in less quantities than a gallon, and any drinking on the premises; but not the sale of meat, fish, butter, and other food articles in a general store. By the weight of authority police license may be required for the sale of meat, or for the sale of salt meat, and fish outside the market; milk, groceries, and victuals, and other articles of food; or for the wholesaling of beer, although ordinances of this kind have been held void in a few cases. A grant to a municipal corporation of power to regulate by ordinance the vending of meat, poultry, fish, fruits and vegetables gives authority to prescribe by ordinance the times and places of their sale, and to prohibit the sale of them elsewhere." The text is sustained by many authorities found in the notes.

We are not called upon, however, in this case, to determine whether the authority attempted to be exercised by the ordinance in question is inherent in the city of Newport as such authority is unquestionably given by sub-section 8 of section 3058 of the Kentucky Statutes (a part of the charter for second class cities), wherein it is provided that: "The General Council shall have power by ordinance . . . to restrain and punish engrossing, forestalling and regrating; to regulate the inspection and vending of flesh, fish, meats, poultry, fruits, vegetables,

butter, lard and other provisions, and the place and manner of selling and inspecting the same.''

And by sub-section 7 of that section the council is authorized ''to provide for the government and regulation of markets, market-places and meat-shops, and the amount of license tax to be paid therefor.'' In sub-section 1 of the same section the council is authorized ''to regulate or prevent the carrying on of any business which may be dangerous or detrimental to the public health, or the manufacturing or vending of any articles deleterious to the health of the inhabitants.''

It would be a work of supererogation for us to refer to or notice the many authorities upholding the right and authority of the legislatures of the various states to confer the right upon municipalities in furtherance of the police power to regulate and control the sale of foodstuffs. However, this question was before this court in the case of City of Bowling Green v. Carson, 10th Bush 64. In that case an ordinance had been passed by the council for the city of Bowling Green prohibiting the sale of fresh beef in quantities less than by the quarter at any other place than the market place during market hours, which were specified in the ordinance. The right of the council to prescribe such prohibition was drawn in question, but this court in upholding its right to do so, said:

''The power of the legislature to delegate to municipal corporations the right to establish markets and regulate the sale and purchase of marketable articles, and to forbid such sales or purchases at other than the market places during market hours, seems to us unquestionable.

''The right to make such regulations grows out of the general police power of the government, and unless they are unreasonable or oppressive it is the duty of the courts to enforce them. The regulations under consideration do not conflict with public policy, and are neither unreasonable nor oppressive. Appellee therefore had no right to disregard them. Nor can he justify his conduct under a license granted him before the market place was established. Whatever may have been his rights under his license, like all other citizens, he was bound to exercise his right to do business and to enjoy his property subject to such reasonable and proper regulations as the city government might adopt for the good of the general public.''

A well-considered case dealing with this subject is that of State v. Sarradat, 24 L. R. A. 54, 46 La. Ann. 700. In that case an ordinance of the city of New Orleans was attacked because it attempted to designate the place or places where perishable food, including meats, vegetables, etc., should be sold during certain hours of the day, but the court upheld its validity, and among other things said:

"There was no monopoly created in favor of one or more persons by the prohibition of the sale of said articles immediately on the banquettes and approaches to the markets. This regulation did not prevent their sale elsewhere, either on the market or beyond the market limits. The market ordinance is not oppressive, as it interferes with no right of the defendants. It is not partial and does not operate against them exclusively, but is applicable to the vendor of articles or goods required to be sold within certain limits and within certain hours."

In the case of Wells v. Town of Mt. Olivet, 126 Ky. 131, 11 L. R. A. (N. S.) 1080, 102 S. W. R. 1182, this court had under consideration the validity of an ordinance prohibiting the hitching of horses upon any of the streets of the town of Mt. Olivet except at a place provided for that purpose. It was held that the ordinance was a valid exercise of the police power conferred upon the town by the provisions of its charter, and in the course of the opinion, it is said:

"When the aid of the court is invoked to declare a municipal ordinance void, it must clearly appear that it is inherently violative of the law or some of the well-settled principles that are generally recognized as limitations upon the power of municipalities in the enactment of ordinances, or, if the ordinance is not inherently defective as coming within these inhibitions, then the person attacking it must affirmatively show that, as applied to him, it is unreasonable, unfair or oppressive."

It is insisted, however, that there is no public market place established in the city of Newport where articles of food, including meat, may be exclusively sold, and that until that is done the city has no right to prohibit its sale upon the streets, as is attempted to be done by the ordinance in question. We are unable to see any merit in this contention. It is admitted that there are regular butcher shops or places located within the city where food of this character may be sold, and that they are under some kind of regulation by the city looking to

their improved sanitary condition, and because such places are not concentrated at one or more public market houses cannot possibly, according to our view, have any effect upon the right of the city to prescribe by ordinance that such food shall not be sold in the manner legislated against, and which is shown to be unsanitary and detrimental.

It must not be forgotten that there is no effort by the city in enacting the ordinance to prohibit altogether the sale of fresh meats within the city limits. The prohibition is one looking to regulation of the *manner* of its sale, only. If it should be insisted that the ordinance prohibits that particular manner entirely, it can readily be answered that all regulations consist in *pro tanto* prohibitions. For if the regulating law should forbid the sale without the procuring of a license, it would prohibit such sale without such procurement. Likewise, if it should prescribe that the places where the meat is permitted to be sold shall be screened, and the shops should be provided with certain character of refrigeration, it would necessarily follow that places not so provided would be prohibited from engaging in the business. All the authorities agree that so long as the regulation is reasonable it is within the authority of the regulating power to make it. Nor is there any discrimination, as contended, to be found in the ordinance. Everyone is prohibited from selling meats in the particular manner denounced, but neither appellant nor any other person is prohibited from selling meat within the city in the manner not denounced. Neither is there any merit in the contention that the sale by *retail* only is prohibited, and that it does not include sale made in that manner by *wholesale,* for clearly a law is not illegal because it does not go far enough to include the forbidding of other acts which themselves might be detrimental to the public interest. As an illustration, it might be a proper subject of municipal regulation to prevent the running at large upon the streets of the town of any character of stock, but because an ordinance attempts to prevent the running at large upon the streets of horses, and does not include cattle, it could not be said to be invalid for that reason. So, in the instant case, conceding that the selling of fresh meat by wholesale from a vehicle upon the streets would be unsanitary, and to sell it by retail in such a manner would be likewise unsanitary, would not make an ordinance prohibiting one of the characters of sale

illegal because it did not include the other. In other words, the doing of that which is authorized may not be rendered invalid because another authorized thing was not done.

We deem it unnecessary to further discuss the question, being convinced that the ordinance is a valid exercise of the police power conferred by the legislature upon the city of Newport, and the judgment so holding is affirmed.