## City of Morganfield v. Leo Wathen, et al.

## Same v. Leo Wathen Drug Company.

(Decided March 21, 1924.)

## Appeal from Union Circuit Court.

1. Intoxicating Liquors—Statute Giving Power to License Sale of Liquors Repealed.—Ky. Stats., section 3490, subsection 27, conferring upon cities of the fourth class the power to license, regulate, and restrain sale of intoxicating liquors, was completely annulled by the Rash-Gullion Act, and the Prohibition Act of 1920.

2. Municipal Corporations—Powers Granted.—Municipalities have only such powers as are specifically granted them, and such as necessarily and properly appertain to and are incident to the granted powers.

3. Municipal Corporations—Repeal of Statute Giving Municipality Power Renders Nugatory Ordinance Enacted Thereunder.—A repeal of a statute by the legislature ipso facto rendered nugatory an ordinance of a city enacted in pursuance of the repealed statute; the city having no power to pass the ordinance in the absence of such statute.

4. Intoxicating Liquors—City of Fourth Class May Not Levy License Tax Upon Druggist for Privilege of Selling Liquor.—A municipality of the fourth class may not by ordinance levy a license tax upon a druggist for the privilege of selling whiskey on prescriptions of regularly licensed and practicing physicians, under the Volstead Act (U. S. Comp. St. Ann. Supp. 1923, section 10138¼ et seq.) and the Kentucky Prohibition Acts of 1920 and 1922, and Ky. Stats., section 3490, subsection 27.

5. Intoxicating Liquors—Druggists Voluntarily Paying License Tax Under Invalid Ordinance Cannot Recover.—A druggist voluntarily paying a license tax for the privilege of selling whiskey on prescriptions under an invalid ordinance cannot recover the same.

6. Payment—What are Voluntary Payments—Effect of Protest Stated.—Where one pays an illegal demand with full knowledge of all the facts which render the demand illegal without an immediate and urgent necessity therefor, or unless to release his person or property from detention or to prevent an immediate seizure of his person or property, the payment is voluntary, and the filing

of a written protest at the time of making the payment does not change its character.

7.  Intoxicating Liquors—Recovery of Tax Paid Under Mistake of Law.—A license tax paid by a druggist for privilege of selling intoxicating liquor under an invalid ordinance and under mistake of law may be recovered, unless the payment was voluntary, and a payment is voluntary when it can be enforced only by suit, and payment of the tax under protest is immaterial even though the payment is made before tax is delinquent, to prevent imposition of a penalty and interest.

TRUMAN DRURY for appellant.

ALLEN, HARRIS & ALLEN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Affirming in part and reversing in part.

This appeal presents (1) the question whether a municipality of the fourth class may by ordinance levy a license tax upon a druggist for the privilege of selling whiskey on prescriptions of regularly licensed and practicing physicians; and (2) whether a druggist who has paid such license tax under protest may recover the same in this character of proceeding.

Many years ago the city of Morganfield passed a license ordinance containing many sections, one of which reads:

"To persons who are druggists in good faith, to retail spirituous and vinous liquors at the drug store in quantities not less than a quart, the liquor not to be drunk on the premises or adjacent thereto, and to sell in quantities less than a quart, for medicinal purposes only, on the prescription of a regular practicing physician, $250.00 per year."

Druggists in the town of Morganfield, including appellee Wathen, have been paying a license tax under the city ordinance, and the first of the two actions above styled was commenced last May by Wathen to enjoin the city and its officials from collecting or attempting to collect from him a license tax of $250.00 for the year 1923-24, fixed by the city ordinance.

The second action by Wathen was commenced to recover from the city three sums of $250.00 each, paid by him for previous years since the Volstead Act has been in effect as a license fee for druggist under the said ordinance.

The learned chancellor granted the prayer of each of the petitions and enjoined the city of Morganfield from collecting or attempting to collect the current license fee of $250.00 claimed by the city as due from Wathen; and also adjudged that the plaintiff Wathen recover of the city of Morganfield $250.00, with interest from May 9, 1920, a like sum with interest from May 12, 1922, and a like sum with interest from July 3, 1923, and his cost, being the several amounts paid as license tax by Wathen to the city of stated dates. The temporary injunction granted by the clerk was made permanent. To this judgment the city objected and excepted, and its objections and exceptions being overruled, it appeals.

It insists that the ordinance. which is admitted to have been valid before the passage of the Volstead Act and the 1920 and 1922 Prohibition Acts in Kentucky, is yet valid and enforceable, and that the city is entitled to collect of Wathen, who operates a drug store, the license fees prescribed by the ordinance.

On the other hand, it is contended that the Rash-Gullion Act and its predecessor in Kentucky was intended by the legislature to be a full and complete law on the subjects covered by it and intended to supersede all other laws of the Commonwealth on that subject, from which it is argued that it repealed subsection 27 of section 3490, Kentucky Statutes, which confers upon cities of the fourth class the power to license, permit, regulate and restrain the sale of all kinds of vinous, spirituous or malt liquors within the city limits and to restrain or prohibit the sale thereof within one mile of the limits of such city. Manifestly the city has no power, since the enactment of the Rash-Gullion Act, to grant the privilege of selling either spirituous, vinous or malt liquors within its limits, for that act provides:

> "That it shall be unlawful to manufacture, sell, barter, give away or keep for sale, or unlawfully have in possession or transport spirituous, vinous, malt or intoxicating liquors except for sacramental, medicinal, scientific or mechanical purposes in the Commonwealth of Kentucky."

The state law in effect prohibits such a license. The Rash-Gullion Act as well as the 1920 act of the Kentucky legislature repealed all acts and parts of acts in conflict with it. Subsection 27 of section 3490 was swept away by

that inclusive repealing clause and was completely annulled to the extent that it is out of harmony with the prohibition laws.

Municipalities have only such powers as are specifically granted them and such as necessarily and properly appertain to and are incident of the granted powers. Without legislative authority a city of the fourth class would have no power to enact such an ordinance as the one in question. Although at the time of the enactment of such an ordinance there was a valid statute to support and warrant it, the repeal of the statute by the legislature *ipso facto* rendered nugatory the ordinance of the city enacted in pursuance of the repealed statutes.

In the recent case of John J. Craig, Auditor of Public Accounts, etc. v. J. W. Renaker, a druggist, 201 Ky. 576, it was specifically held that the Commonwealth was not entitled, under sections 4203 and 4205 and 4225, Kentucky Statutes, to collect a license fee of druggists for the privilege of selling liquors for medicinal purposes as allowed by the Volstead and Rash-Gullion acts, the reason being that the named sections are in conflict with the recent prohibition laws of the state and were by implication repealed by the enactment of the latter.

In disposing of the question involved in the Renaker case, *supra,* we said, in the case of Gifford v. Commonwealth, 2 Ky. Law Rep. 437:

"It was held that a section in the charter of the town of Falmouth, passed by the legislature in 1878, granting the council of that town the power to license and regulate the sale of liquors, operated as a repeal of the general local option law then in force, because repugnant thereto and inconsistent therewith. So, too, in the later case of Tabor v. Lander, 94 Ky. 237, it was held that where the general local option law had been voted into operation in a civil district of which a city formed a part, an amendment to the city charter conferring for the first time authority on the city council to license taverns and coffee houses with the privilege of retailing liquor in the city, repealed the local option law so far as the city was concerned. The decision was rested on the ground that the authority conferred on the council to license and regulate the sale of liquors was inconsistent with the general local option law, and indicated a clear intent to repeal or suspend the

operation of that law. There is no reason, of course, why the rule should not work both ways. In other words if the granting of power to a municipal corporation to license and regulate the sale of intoxicating liquors has the effect of repealing the local option law, then the adoption of a state prohibition act, prohibiting the sale of intoxicating liquors except for specific purposes and under conditions therein set forth, and purporting to be the whole law on the subject, will necessarily have the effect of repealing a license statute which confers the privilege of sale under circumstances and conditions wholly at variance with the provision of the prohibition law. In reaching this conclusion we do not mean to hold that the state may not, under its police power, impose a license fee on druggists who sell under the new restrictions and conditions imposed by the prohibition acts, but merely hold that the old license statute is no longer in force."

Adopting the rule applied in the Craig-Renaker case, *supra,* we must hold that the city was without authority at the time of the institution of this litigation to enact such an ordinance as complained of or to enforce the collection of license fees such as the one attacked, and the chancellor properly granted the injunction.

2. The second suit to which we have referred seeks to recover license tax fees paid in former years under this invalid, ordinance. This the chancellor, erroneously adjudged to the plaintiff Wathen. Whether the plaintiff Wathen was entitled to recover the tax thus paid depends upon whether the payment was voluntary or otherwise. Where one pays an illegal demand with full knowledge of all the facts which render the demand illegal without an immediate and urgent necessity therefor, or unless to release his person or property from detention or to prevent an immediate seizure of his person or property, the payment is voluntary. The filing of a written protest at the time of making the payment does not change its character from that of voluntary to involuntary. 21 R. C. L. 141.

As the case went off on general demurrer the averments of the petition may be looked to for the facts. The petition says in part:

"Plaintiff says that he first refused the payment of said license tax, but frequent demands were

made of him by the city council of Morganfield for the payment of said license tax of $250.00, and under *protest* he did so pay the said license fee as imposed by said ordinance for the year 1920 to 1921, and that said check issued by him to A. F. Waller, clerk, for the payment of said license tax is filed herewith as part hereof.

"Plaintiff says that on March 21, 1922, the city council of Morganfield, Kentucky, did again demand of him the sum of two hundred and fifty ($250.00), the license tax imposed by said ordinance aforementioned and that under protest and on March 21, 1922, he issued his check for $250.00 to A. F. Waller, clerk, in payment of said license tax to May 10, 1922, and that said payment of $250.00 so made by him was made under protest and said check paying said license tax is filed herewith as part hereof.

"Plaintiff further says that on May 12, 1922, the city council of the city of Morganfield again demanded of plaintiff the payment of the license tax for the ensuing year and that under protest he issued his check to A. F. Waller, clerk for two hundred and fifty dollars ($250.00) for the license tax imposed by said ordinance aforementioned to May 12, 1923.

"Plaintiff says that said check paying said license tax is filed herewith as part hereof.

"Plaintiff further says that all of said payments were made by him under protest and only on demand of the city council of the city of Morganfield, Kentucky."

In the case of City of Louisville v. Becker, 139 Ky. 17, 28 L. R. A. (N. S.) 1045, it was held that the payment of the tax under such circumstances in order to obtain a discount, is necessarily in view of the provisions of the statute, to be regarded and treated as a voluntary payment. It is so in substance and effect declared to be by the express provisions of the statute. The privilege of a discount is given to those persons only who make voluntary payments of the tax imposed upon them. And they who avail themselves of the privilege should not refuse to take also the burden of any consequences which are the necessary or legitimate results of the alternative they have chosen. . . . It is true that he (the taxpayer) accompanied his payment with a formal protest; and-it appears that in one instance the collector was in-

duced, upon solicitation, to say that the payment of taxes was demanded. But whether these formalities of demand and protest were actually indulged in the present case was quite immaterial since they could have no influence upon a clear, certain and positive ruling of law or be allowed to vary or diminish the force, significance or effect of the express provisions of the statute. The several payments made by the plaintiff must be held to have the character and effect assigned to them by these provisions. In conformity to the absolute rule thereby established they must be considered as his voluntary acts and must be treated by courts of law as having this and no other character.

In order to constitute an involuntary payment, the payment must have been made under an immediate and urgent necessity to release the person or property from detention or to prevent an immediate seizure of the person or property; and where a taxpayer is entitled to a day in court and can litigate the demand to pay interposed against him, but instead of doing so, pays it, the payment is considered voluntary. Tax paid under a mistake of law may be recovered unless such payment is voluntary, and a payment is voluntary when it can be enforced only by suit. City of Louisville v. Anderson, 79 Ky. 334; L. & N. R. R. Co. v. Com., 89 Ky. 531.

The general rule seems to be that a payment of tax under protest before the time payment can be enforced is a voluntary payment, and the sum paid cannot be recovered by the taxpayer unless a payment under protest prior to that time is authorized by statute A mere declaration by one at the time he pays money as tax that the payment is made under protest does not show that the payment is not voluntary. Town of Pheobus v. Manhattan Club, 52 S. E. 839. A mere protest accompanied by a payment does not change this character. It remains voluntary, and a voluntary payment concludes the parties. Gerry v. Siebretch, 88 N. Y. Sup. 1034. Certainly a payment of illegal tax under protest before the tax had become delinquent and without any demand or threat, merely to prevent the imposition of a penalty and interest which would accrue on a succeeding day, was voluntary, so that the tax paid could not be recovered. C. N. O. & T. P. Ry. Co. v. Hamilton, 113 S. W. Rep. 361.

Measured by the averments of the plaintiff Wathen's petition, he was not obligated to pay the tax at the time he did make the paymnt in order to avoid a penalty or

to release himself from custody or secure the possession of his property  So far as the averments of the petition show he was in no immediate danger of either criminal or civil proceedings, looking to the collection of the license tax.   This payment therefore was voluntary, and being voluntary is not recoverable.

Judgment affirmed in so far as it granted an injunction restraining the collection of the current tax, and reversed as to the recovery for the three past years.

Judgment affirmed in part and reversed in part.

Whole court sitting.