## Booth v. Board of Education of City of Owensboro.

(Decided May 28, 1929.)

BEN D. RINGO for appellant.

FLOYD J. LASWELL for appellee.

Opinion of the Court by Judge Clay—Reversing.

This is a taxpayer's action to enjoin the board of education of the city of Owensboro from issuing and selling school bonds amounting to $200,000. The demurrer to the petition was sustained, and the petition was dismissed. The taxpayer appeals.

Owensboro is a city of the third class with a population in excess of 20,000. Under its charter the board of education is authorized to order an election and submit to the voters the question whether or not the board shall issue bonds to any amount it deems sufficient, subject to the limitation provided by sections 157 and 158 of the Constitution, for the purpose of providing suitable grounds and school buildings and equipment. On February 23, 1929, a bond issue of $200,000 was submitted to the voters of Owensboro. The proposition carried by a vote of 1,861 to 264. It is conceded that the proceedings were all regular, and the only attack made on the validity of the bonds is that the amount of the indebtedness, together with the existing indebtedness of the board, will exceed 2 per cent. of the taxable property in the city. With respect to this contention, the facts are these: The assessed value of all taxable property in the city is $13,395,285; 2 per cent, thereof is $267,905.70. The board is already indebted in the sum of $273,000.

The precise question here involved was before the court in the recent case of Boll v. City of Ludlow, 227 Ky. 208, 12 S. W. (2d) 301. Following several cases to the same effect, we held that a bond issue for school purposes was an indebtedness of the board of education where the boundaries of the school district coincided with those of the city, that the limit of indebtedness fixed by section 158 of the Constitution was 2 per cent. of the taxable property of the city, and that the Legislature itself was without authority to raise this limit. It is suggested that we recede from this position because there are other factors that the court failed to take into consideration in deciding the question.

Particular stress is placed on section 183, which provides: "The general assembly shall, by appropriate legislation, provide for an efficient system of common schools throughout the state."

It is argued that this section is mandatory; that the framers of the Constitution did not intend merely

to use idle words; that, having issued a command, they did not intend to limit the powers of the Legislature so as to render meaningless the words employed. It must not be overlooked that in adopting section 158 of the Constitution the framers thereof not only issued a positive command, but spoke in language much more explicit and certain than that employed in section 183. It cannot be said that words of such general import as those contained in section 183 are sufficient to authorize the Legislature wholly to ignore other limitations imposed by the same instrument. On the contrary, it is clear that whatever duty is imposed is subject to the limitations of the Constitution.

But it is suggested that section 157 of the Constitution fixes the tax rate for the various municipalities for "other than school purposes," that this section should be construed in connection with section 158 of the Constitution, and that the words "for other than school purposes" should be carried over into that section. The fact that these words do not appear in section 158 is most persuasive that the framers of the Constitution did not intend to make an exception of indebtedness incurred for school purposes, but did intend to fix a limit of indebtedness which the various cities, towns, counties, taxing districts, and municipalities could not exceed for any purpose.

There is the further argument that Owensboro is a progressive city, that its school facilities are wholly inadequate, and that some consideration should be given to these factors. The only instance in which the limit fixed by section 158 of the Constitution may be exceeded is "in case of emergency, the public health or safety should so require." Even if inadequate school facilities could ever constitute an emergency, a question not decided, no facts are pleaded showing that such an emergency exists. On the contrary, the case went off on demurrer. Therefore the situation is one where the limit may not be exceeded.

In deciding constitutional questions, we are often faced by hard cases, accompanied by an urgent appeal to find some way to remedy the situation, but, where the Constitution speaks in plain and unambiguous terms, it is our mandatory duty to give effect to its provisions, although the consequences are such as we would like to avoid if possible.

722

As the petition disclosed facts showing that the proposed bond issue was invalid, it follows that the court erred in sustaining the demurrer to the petition.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.