**Brachey, Judge, et al. v. Maupin.**
Feb. 24, 1939.

James Garnett, Judge.

468

THOMAS A. BALLANTINE and H. O. WILLIAMS for appellants.
JOHN H. CHANDLER for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

In 1931, the legislative body of the city of Louisville passed an ordinance entitled: "An Ordinance regulating the use of loud speakers, radios, bells, horns and other instruments for advertising purposes in the City of Louisville and providing a penalty for violation of this ordinance." The ordinance made it unlawful for any person, firm or corporation to so use a loud speaker, radio, bell or horn or sound making instrument for advertising purposes as to cause annoyance or in such manner as to become a nuisance or as to disturb the public peace and tranquility, and provided a penalty for the violation thereof.

The Director of Safety of the City of Louisville entered a police order whereby he ordered the arrest of any person operating a sound truck in the central traffic area, on the ground that such constituted a violation of the ordinance.

Samuel Maupin, the appellee in this case, who was engaged in the operation of what is commonly known as a sound truck, instituted a suit against the Director of Safety and the City of Louisville seeking to enjoin them from enforcing the police order, and the Jefferson

circuit court held the ordinance invalid. No appeal was prosecuted from the judgment of the circuit court.

In 1935, the city enacted a general Traffic Code known as the Traffic Ordinance. Section O of that ordinance reads as follows:

"It shall be unlawful, and it is now hereby declared to be a nuisance for the operator and/or the owner of a vehicle or truck intended primarily for advertising purposes and/or usually or commonly called a 'sound truck' and/or equipped or provided with large or loud bell or bells, or horn, or with an amplifier or loud speaker, or with radio or other mechanical sound or noise-producing instruments or appliance with amplifier or loud speaker or with music or sound-producing instruments of appliances operated by hand, steam, air, electricity, or other means, drive or operate, or cause to be driven or operated, such vehicles or trucks on or upon any of the streets of the City of Louisville, at any hour or time of the day or night, because such vehicle or truck, when so operated, tends to and does disturb the public peace and tranquility, interferes with traffic, and endangers the public safety, welfare and life and property."

Plaintiff continued the operation of his sound truck notwithstanding the ordinance, and certain prosecutions were instituted against him in the Police and Ordinance Court of the City of Louisville, and certain fines were imposed against him for violation of the ordinance. He then filed this present action against the Judge of the Police and Ordinance Court of the City of Louisville and the City of Louisville and perhaps other officials, seeking to enjoin them from further prosecuting him under the ordinance upon the ground that it is invalid and discriminatory, in that it discriminates against the advertising business and seeks to make a "nuisance of operating a sound truck or vehicle even if it is only *equipped* with a *sound-producing instrument* whether or not it makes little or much noise or none at all."

During the pendency of the litigation and before answer was filed, the Legislative body of the City of Louisville amended Section O of the traffic ordinance quoted above, which as amended reads as follows:

"It shall be unlawful for any person, firm or corporation to operate or cause to be operated any

vehicle or truck known as a sound truck, when such operation includes the sounding of or causing to be sounded, any bell, bells or horn, or amplifier, or loud speaker or radio or other mechanical sound or noise producing instruments or appliance or music or any other sound producing instruments or appliances, operated by hand, steam, air or electricity or other means upon any of the streets of the City of Louisville, lying within the area bounded by the Ohio River, Preston Street, Breckinridge Street and Eighth Street, at any hour or time of the day or night; and it shall be unlawful for any person, firm or corporation to operate or cause to be operated any such vehicle or truck in the manner hereinabove described within two City blocks or city squares of any hospital sanitarium or sanitorium at any hour or time of the day or night; and it shall be unlawful to operate or cause to be operated any such vehicle or truck in the manner above described at any other place or places within the corporate limits of the City of Louisville, except between the hours of nine A. M. and Six P. M."

After the passage of the above ordinance plaintiff applied to the Jefferson circuit court for a writ of prohibition against the Judge of the Police and Ordinance Court restraining him from prosecuting plaintiff under the ordinance. Defendants demurred specially to the petition on the ground that the remedy for a defendant in a prosecution in police court wherein a fine of $20 is assessed, was by appeal rather than writ of prohibition and the court below sustained the special demurrer. Plaintiff then prosecuted an appeal to this court from the order of the Jefferson circuit court dismissing his petition, and in July, 1936, this court issued its mandate reversing the lower court and ordering the chancellor to hear and determine the questions presented by the plaintiff's petition on the merits. Plaintiff then filed his amended petition attacking the validity of the ordinance as amended alleging that "like the other ordinances it is discriminatory, unreasonable, oppressive, unconstitutional and void."

The defendants filed their answer to the petition and petition as amended, traversing the allegations of same, and by Paragraph Three pleaded affirmatively the ordinance as amended, and further alleged that the area described in the ordinance bounded by Preston Street

on the east, Breckinridge Street on the south, Eighth Street on the west and the Ohio River on the north, constituted the congested traffic area of the city of Louisville and that in this area the movement of traffic and pedestrians is controlled by traffic lights; that the streets lying in this area are hazardous due to the congestion of traffic thereon and any unusual noise that would attract the attention of pedestrians and motorists, using said streets in said area would materially and seriously increase the natural hazards attendant upon such use; that the sound truck of the plaintiff is manufactured, designed and operated for the express purpose of attracting the attention of those within the range of its sound, to the message that it carries, for the space provided for advertising, posters, etc., and that by reason of such attraction thereto the safety of the public is affected and that the danger of the use of the streets is thereby materially increased; that in addition to the danger attendant upon the operation of sound trucks such as used by the plaintiff which produces loud, disturbing and unnecessary noise and disturbs the public peace in those areas in which it is operated and that numerous complaints and objections from the public as a whole have been made and that the police department of the city is frequently called upon by the inhabitants of the city and of the public generally to prevent its operation. They further alleged that in the areas above described are located all of the office buildings used by doctors and surgeons in the city of Louisville, and that the operation of plaintiff's sound truck in these areas had in the past annoyed, and will in the future annoy, disturb and injure the patients of said doctors and surgeons and will thereby affect the health and well-being of the community; that the sound produced by plaintiff's sound truck is plainly audible and disturbing for at least two city blocks or squares and that its operation within that distance of any hospital or sanitarium located in the city disturbs and affects the general health and well-being of the occupants of the hospitals and sanitariums and the operation of said sound truck in the manner operated by plaintiff greatly interferes with the safety of the public generally.

The plaintiff filed a demurrer to the third paragraph of the answer, which demurrer the court sustained. Plaintiff moved the court to extend the time within which he is allowed and required to take proof

and also moved the court to permit him to file the proof theretofore taken in the previous actions involving the previous ordinances, and also the record, exhibits and pleadings in those actions, to be used as evidence in this action. The court also granted to both parties an extension of time to take such other proof as they may desire.

After the evidence was taken and the case submitted for judgment, the court entered judgment in favor of the plaintiff granting the relief prayed in the petition. This appeal follows.

We have set out the former ordinances and the results of litigation in which they were involved, because plaintiff stresses the result of that litigation as reason why the judgment in the present case should be affirmed. He insists that the former ordinances and the present one are substantially the same and have already been held invalid.

We are unable to agree that the former ordinances and the one presently involved are of the same character and kind. It is our view that they are radically different. The former two ordinances sought to entirely prohibit the operation of a sound truck in the city of Louisville at any time or place, whereas the amendatory ordinance here involved is not so broad in its scope, and seeks to regulate rather than prohibit.

It is asserted in brief of counsel for defendant, and not denied, that the territory defined in the ordinance wherein the operation of sound truck is entirely prohibited, comprises only 5% of the corporate limits of the city of Louisville, thus leaving 95% of the corporate limits of the city wherein sound trucks may be operated, except between the hours of six P. M. and nine A. M.

As we have seen, there are two prohibitory elements contained in the ordinance: (1) The restricted territory defined in the ordinance comprising the congested traffic and business area of the city and wherein there are located the hospitals, sanitariums, etc., and (2) the time limit as to any other place in the city except between the hours of nine A. M. and six P. M.

Counsel for defendants concedes in his brief that a sound truck is not a nuisance per se, but asserts that it is a potential nuisance and may be regulated reasonably and the elements which might constitute a nuisance re-

moved by reason of the regulation. In brief of counsel for plaintiff it is conceded that "a mere potential nuisance, such as every automobile undoubtedly is, cannot be prohibited, but can only be regulated and then only reasonably regulated."

We agree with counsel in their respective statements of the law, in respect to the authority of legislative bodies to regulate a potential nuisance. Plaintiff contends, however, that the ordinance is prohibitory rather than regulatory and constitutes an invalid exercise of the police power. Hence the question to be determined is whether the prohibitory restrictions in the ordinance as we have noted above are reasonable regulations or a reasonable exercise of the police power. Since a sound truck or other motor vehicle is not a nuisance per se, but a potential nuisance only, the case must be determined by the evidence.

Plaintiff's sound truck is equipped with loud speaker, or other sounding devices and musical instruments, and there is posted on the sides of the truck advertising matter in the form of circulars, etc.

We will first consider the testimony of the plaintiff, Maupin. He was asked the purpose of the music and he said, "We all know that everybody likes music, if a pretty piece of music is being played, no matter where it is, it will attract a certain amount of attention," and admitted that it attracted more attention than one without music. He admitted that the circulars carried on the truck also attracted attention.

J. D. Thompson, who was introduced as a witness for plaintiff, said that anything that attracts attention of motorists increases the hazards of driving, and the truck is equipped and designed for the purpose of attracting attention.

Paul I. Burkes, a manufacturer and dealer in radio supplies, testified that he had seen the sound truck and that it attracts the attention of people on the streets.

William A. Heuser who was introduced in behalf of plaintiff testified in reference to the effectiveness of the sound devices, etc., as follows:

"Q. What was it that made it more effective? A. Playing those different tunes.

"Q. What is there about playing a tune that

makes it more effective than without? A. It attracts more attention than with the idea of the truck.

"Q. Is it designed for that and does it? A. Yes."

Mark Holme, Floyd Currie and a number of others introduced as witnesses for plaintiff, gave testimony similar to that indicated above. Mr. Currie said that the music attracts the attention of people who come within range of its sound.

Fred Hutt said that "as it (truck) goes along the street everybody who hears it looks to see what advertising it is carrying."

It appears from the evidence of plaintiff and all the other witnesses, whom he called in his behalf, that the sound truck did attract the attention of people on the street and the majority of the witnesses admitted that it was designed so as to accomplish that end.

The defendants called a number of witnesses including policemen, traffic and safety officers and directors and perhaps other officers.

George McAllese, Jr., a Lieutenant of the Bureau of Traffic who had worked in the Traffic Department for a period of twelve years, testified that he had observed the operation of the sound truck and said that it distracts the attention of motorists and pedestrians; that he observed both motorists and pedestrians stopping and looking to see where the sound was coming from, or music rather, and not paying attention to what they were doing at that particular time in driving their vehicles or walking in the street, which created a safety hazard, and creates confusion in the traffic area. He gave it as his opinion based on his years of experience and observation as a traffic officer, that the operation of plaintiff's sound truck on the streets does increase the danger of accidents to both pedestrians and motorists.

Carl E. Hustis, a Sergeant of the Police Force, assigned to the Traffic Department as Director of the Accident Prevention Section, said that in his opinion plaintiff's sound truck or any sound truck is very distracting to both motorists and pedestrians. He testified in part as follows:

"Q. What effect does it have upon traffic? A. I

have found motorists, while in the act of operating their automobiles, instead of paying direct attention to the operation of their cars, were distracted to such an extent that it was entirely possible they could have had an accident, had it not been for the ability of drivers on each side of them.

"Q. What effect, if any, does it have upon the pedestrians that you have observed? A. Invariably it has come to my attention that a pedestrian will stop and turn to notice this advertisement or sound truck, regardless of the position that is in at that time, by that I mean, if he happened to be crossing an intersection does not seem to have any effect upon him; they would stop in the intersection as well as they would on the sidewalk.

"Q. Does that increase or decrease the dangers on the street? A. It increases them."

Mr. Paul Keith, Jr., an attorney of the Louisville Bar, testifying from his personal observation as to the effect plaintiff's sound truck had upon both motorists and pedestrians, testified in part as follows:

"Q. Will you tell me what effect it had upon other traffic? A. As we were nearing the intersection of Fifth and Market Streets, Mr. Ballantine called my attention and asked me to notice what effect it had on pedestrians and motorists, and I took notice of that I saw perhaps a hundred or a hundred and fifty people within that vicinity, and as the sound truck approached, practically all of them around there looked up and into the direction that the sound truck was, and these were people crossing the street, and instead of watching where they were going they looked up to where the music or whatever it was being played was coming from, and I also noticed several drivers of automobiles turn their attention from the way they were driving to the sound of the truck."

On cross-examination Mr. Keith was asked and answered as follows:

"Q. Did you see any stampede of the traffic? A. There was certainly every reason for an accident to happen because everybody looked in the direction of the sound truck instead of paying attention to where they were going.

"Q. As a matter of fact, people did go where they were going and people driving automobiles continued to drive, did they not? A. Yes, without looking where they were going."

Another police officer, Edward P. Beauchel, who had been assigned to the Traffic Bureau for a period of 10 years, said:

"Q. Will you state what effect it has? A. The motorist driving along, naturally when they hear music on the street, will take their attention from in front of them when they are driving their car, watching and listening to the sound truck."

"Q. From your ten years' experience, state in your opinion whether the effect you have described increases or decreases the danger of the use of the streets? A. It will increase the danger of the streets."

Without encumbering this opinion by further detailing the evidence, it is sufficient to say that a number of other witnesses for defendants gave testimony substantially the same as the ones we have referred to above. All the evidence is to the effect that plaintiff's sound truck as equipped and operated attracts considerable attention of motorists and pedestrians, and practically all the witnesses gave it as their opinion based upon their observations and experience that the safety of motorists and pedestrians was greatly endangered thereby.

It is our view that the evidence is clear and convincing that the use of plaintiff's sound truck as equipped and used constitutes a hazard to motorists and pedestrians of the city. It is argued for plaintiff that no accidents have resulted during the many years the sound truck had been in operation on the streets. But this is beside the question. It is not a question of whether or not any accidents or injury to person or property have actually occurred, but whether such is likely to result or be produced.

Having concluded that plaintiff's truck is a potential nuisance and, as equipped and used, actually constitutes a nuisance, the law of such cases is too well known to the legal profession to hardly require the citation of authority. However, we may consider a few authorities pertaining to that question.

In Tolliver v. Blizzard, 143 Ky. 773, 137 S. W. 509, 511, 34 L. R. A., N. S., 890, in discussing the circumstances under which a municipality may exercise its police power, it is said:

"The test in every case is: Is the prohibition of a particular business or the sale of a particular article necessary to prevent the infliction of public injury? * * * Where it is possible to conduct the business without harm to the public, all sorts of police regulation may be instituted, which will tend to suppress the evil." That case supra has been referred to and followed in many later cases.

In Mansbach Scrap Iron Company v. City of Ashland, 235 Ky. 265, 30 S. W. (2d) 968, 970, the opinion discusses the distinction between enterprise or commodities which are (1) dangerous or injurious per se; (2) those which are potentially so; and (3) those which are intrinsically harmless. It was held that those which are potentially dangerous may be regulated. The court said:

"It is, to be sure, a legitimate business, meeting a public demand, but it is the history of experience that it is sometimes conducted in a dubious fashion and becomes a place where thieves turn into cash their ill-gotten plunder. It is, perhaps more often, an innocent receiver of contraband goods. * * * Moreover, such places garner inflammable material and gather disease-laden substances. It is therefore a business having a potential danger to public peace, to public safety, and to public health." See, also, Annotation 22 A. L. R. page 1200; Weber v. Mann, Tex. Civ. App., 42 S. W. (2d) 492.

Also, Section 2825 of the Kentucky Statutes provides that "The department of works shall * * * have exclusive control over the * * * using of all streets, alleys, avenues [and] lanes * * *."

The case of Commonwealth v. Nolan, 189 Ky. 34, 224 S. W. 506, 508, 11 A. L. R. 202, is peculiarly in point. We said:

"So it may be said that the Legislature of this state has exercised the power of regulation mentioned. In addition, it may be said that the Legislature of this state has duly conferred upon the municipal authorities of its cities and towns such

powers as are necessary to regulate the use of their streets by motor vehicles; such authority as appertains to Harlan, a city of the fourth class, being conferred by Kentucky Statutes, Supp. 1918, section 3562, which, among other things, declares that its city council shall have 'exclusive control and power over the streets, roadways, sidewalks, alleys,' etc., of the city. And this power the council has exercised and had the right to exercise by the passage of the ordinance in question. Certainly, the power thus given by the statute, supra, in the absence of express or implied restrictions imposed by some other statute, which is not claimed, can leave no doubt of the right of the city council to pass the ordinance, and such an ordinance is a valid exercise of the police power for the protection and safety of its citizens. Christy v. Elliott, 216 Ill. 31, 74 N. E. 1035, 1 L. R. A. (N. S.) 215, 108 Am. St. Rep. 196, 3 Ann. Cas. 487; People v. Schneider, 139 Mich. 673, 103 N. W. 172, 69 L. R. A. 345, 5 Ann. Cas. 790.''

See also, to the same effect, Com. v. Kingsbury, 199 Mass. 542, 85 N. E. 848, L. R. A. 1915E, 264, 127 Am. St. Rep. 513, wherein it is held that special regulation as to the use of automobiles and motorcycles on particular roads, including complete exclusion therefrom, is a valid exercise of the police power.

In City of Pineville v. Marshall et al., 222 Ky. 4, 299 S. W. 1072, 1074, we said:

"Streets and public ways are dedicated to public use. The individual has no proprietary interest therein save as a member of the general public. And in the interest of the whole people the general council is given exclusive power to enact reasonable regulations for the streets and public ways of the city for common use, and, so long as these are neither unreasonable, arbitrary, oppressive, nor discriminatory, they will be upheld.''

Returning to the question of the prohibitory provisions of the ordinance, we do not think it is invalid because it entirely prohibits the use of sound trucks in the defined area, and any place in the city between the hours of six P. M. and nine A. M. It is the well settled rule that all regulations consist in pro tanto prohibitions.

In Hahn v. City of Newport, 175 Ky. 185, 194 S. W. 114, 115, Hahn challenged the validity of an ordinance passed by the city of Newport wherein it was provided "that it shall be unlawful to sell meats in retail quantities from a wagon or vehicle within or upon the streets of the city of Newport." In that case it was argued, as is here argued in the present case, that the quoted provision of the ordinance was prohibitory and not regulatory. In disposing of that question the court said:

"It must not be forgotten that there is no effort by the city in enacting the ordinance to prohibit altogether the sale of fresh meats within the city limits. The prohibition is one looking to regulation of the manner of its sale only. If it should be insisted that the ordinance prohibits that particular manner entirely, it can readily be answered that all regulations consist in pro tanto prohibitions. For if the regulating law should forbid the sale without the procuring of a license, it would prohibit such sale without such procurement. Likewise, if it should prescribe that the places where the meat is permitted to be sold shall be screened, and the shops should be provided with certain character of refrigeration, it would necessarily follow that places not so provided would be prohibited from engaging in the business. All the authorities agree that so long as the regulation is reasonable it is within the authority of the regulating power to make it."

Furthermore, it is the well settled rule in this jurisdiction, and all others, so far as we know, that the legislative authorities of cities and towns may prohibit the operation of livery stables, factories, and many other occupations or business enterprises, too numerous to mention, within certain defined districts or sections of the city, but may not entirely prohibit the pursuit of any legitimate occupation or business within the corporate limits of the city at all. In such cases the prohibitions limited to certain areas or districts in the city have been held to be regulatory rather than prohibitory.

Under the facts of the present case we see no distinction between it and other like cases and circumstances referred to herein. Nor, do we see any objections to that part of the ordinance which restricts or permits the operation of sound trucks in any place in the corporate limits of the city, except between the hours of nine A. M. and six P. M. During these hours

people have retired from their places of business, and to a great extent from the streets, outside of the main business district, and it could not be but little if any advantage to plaintiff to advertise his business during those hours. And, furthermore, the time between six P. M. and nine A. M. being the time for sleep, rest and repose, it is commonly known that the noise and attraction produced by a sound truck tends to disturb people in their quietude and rest. We think this regulation is a reasonable and legitimate exercise of the police power in the protection of the citizens in their quietude, rest and sleep during those hours.

The facts in this case measured to the authorities herein cited impel us to the conclusion that the ordinance in question is a reasonable exercise of the police power and is valid.

Wherefore, the judgment is reversed and remanded with directions to set it aside and enter one dismissing plaintiff's petition.