S. S. KRESGE CO. *v.* MAYOR OF CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—FINDING OF COURT—EVIDENCE—BUSINESS OF SELLING CUT FLOWERS AND POTTED PLANTS.

   In suit to have declared unconstitutional an ordinance licensing sale of cut flowers and potted plants, finding of trial court there was no evidence to sustain claim that the vendors against whom the ordinance was aimed were irresponsible, of fly-by-night character, or that they doped flowers or sold imperfect ones except at a reduced price *held,* sustained by record.

2. LICENSES—REGULATION OF LEGITIMATE BUSINESS.

   The sale of cut flowers and potted plants is a legitimate business and should remain unhampered by legislative action unless restrictions are required for the protection of the public.

3. MUNICIPAL CORPORATIONS—ORDINANCES REGULATING BUSINESSES.

   Municipal ordinances, though ostensibly enacted as public regulations, which are so framed as to control or regulate a common and useful private business or occupation are subject to review and investigation in the courts to determine their validity by the test of whether, under the guise of a police regulation, there is an arbitrary, unreasonable, or unwarranted interference with the constitutional rights of the private citizen to pursue a lawful business or calling and to make contracts with others in relation thereto.

4. SAME—ORDINANCES—LICENSES—SALE OF CUT FLOWERS AND POTTED PLANTS.

   An ordinance prohibiting the sale of cut flowers and potted plants except when licensed by the mayor but not regulating their sale on the streets or by temporary merchants during holiday seasons *held,* an unreasonable interference with the rights of citizens to carry on a legitimate business and an attempt to stifle competition rather than to enforce reasonable and necessary regulations of a business to protect the public.

5. Constitutional Law—Presumption of Validity.

While there is a presumption that a legislative act is valid, nevertheless, courts have power to determine whether, as a matter of fact, the prohibition bears a reasonable relation to the public health, safety, morals, and general welfare.

6. Same—Permissible Classifications.

Constitutional provisions relating to equal protection of the laws permit classification in ordinances based on natural distinguishing characteristics which bear a reasonable relation to the object of the legislation (U. S. Const. Am. 14; Mich. Const. 1908, art. 2, § 16).

7. Same—Licensing Sale of Cut Flowers and Potted Plants—Police Regulation—Interference With Business.

Ordinance requiring license by mayor before business of selling cut flowers and potted plants could be conducted held, to involve the infringement of the right of property or business under the guise of police regulations, where no showing is made of the existence of any evil in connection with such business (U. S. Const. Am. 14; Mich. Const. 1908, art. 2, § 16).

8. Costs—Construction of Ordinances.

No costs are allowed in suit involving construction of an ordinance.

Appeal from Wayne; Sanford (Joseph F.), J., presiding. Submitted June 16, 1939. (Docket No. 21, Calendar No. 40,519.) Decided September 5, 1939.

Bill by S. S. Kresge Company, a Michigan corporation, against Frank Couzens, Mayor, Heinrich A. Pickert, Commissioner of Police, and Raymond J. Kelly, Corporation Counsel, all of the City of Detroit, for an injunction and to have an ordinance for the licensing of florists declared void. Decree for plaintiff. Defendants appeal. Affirmed.

*Lawson & Giles* (*William B. Giles*, of counsel), for plaintiff.

*Raymond J. Kelly*, Corporation Counsel, and *Nathaniel H. Goldstick*, Assistant Corporation Counsel, for defendants.

SHARPE, J.   The city of Detroit enacted ordinance No. 170-C which became effective July 7, 1932.   The ordinance, which is copied in the margin,* provides for the licensing of those engaged in the florist business.

S. S. Kresge Company, of Detroit, filed a bill of complaint in the circuit court of Wayne county to have the ordinance declared invalid and void and contends that the subject matter contained in the ordinance is beyond the police power and amounts

---

* ORDINANCE No. 170-C

"An ordinance to provide for the regulation and licensing of florists and providing a penalty for the violation thereof.

"*It is hereby ordained by the people of the city of Detroit:*

"SECTION 1.   No person, firm or corporation shall engage in the florist business in the city of Detroit without first having obtained a license from the mayor.

"SEC. 2.   A florist for the purpose of this ordinance shall mean all persons, firms or corporations, both principals and agents, who engage in the business of selling cut flowers and potted plants, and shall not be construed to mean or include market selling by persons selling such stock, produced by themselves, upon any of the municipally owned and regulated public markets, or producers, or their agents, servants and employees selling such stock to dealers, or producers or persons selling only dry bulbs, roots, tubers, corms, unpotted hardy perennials, bedding plants, deciduous plants, seedlings or evergreens, within the meaning of trees, shrubs, vines and vegetables or cereal plants.

"SEC. 3.   Every person of good moral character desiring to engage in the florist business in the city of Detroit shall make an application in writing to the commissioner of police for a license to engage in the florist business at least 30 days before so engaging, stating the location and address at which he desires to engage in the business.

"The commissioner of police may require, under oath if desired, information concerning the moral character and identification of the applicant.   The commissioner shall then transmit the results of such investigation to the mayor together with his recommendation concerning the granting or refusing a license.   The mayor shall then issue a license to such applicant if he is found qualified for the same under the ordinance and has furnished the required bond as hereinafter set forth, or may refuse to issue a license if the applicant is not found qualified or has not fully complied with the ordinance.   The moral character of the applicant shall be considered from the standpoint of protecting the public from dishonest or fraudulent conduct, or wilful misrepresentations in the sale of cut flowers and potted plants.

"SEC. 4.   Bond required.   Before a license as herein provided shall be issued, the applicant shall execute to the city of Detroit a

to an unreasonable interference with the rights of citizens to carry on a legitimate business; that the ordinance by including only persons "selling cut flowers and potted plants" makes an arbitrary and unreasonable classification, constitutes class legislation, and conflicts with the fourteenth amendment to the United States Constitution and the Michigan Constitution, art. 2, § 16; and that the ordinance is invalid because it exacts an excessive license fee.

good and sufficient bond for the period of 1 year in the sum of $500, with good and sufficient surety, or sureties, to be approved by the mayor as to the sufficiency of the surety or sureties, and to be approved by the corporation counsel or an assistant corporation counsel, as to form; which bond shall be conditioned as to indemnify or reimburse any purchaser of goods, wares or merchandise in a sum equal to at least the amount of any payment or payments such purchaser may have been induced to make through misrepresentation as to the proper delivery or the kind, quality or value of such goods, wares or merchandise, made by the owners, or by their servants, agents or employees at the time of making the sale; and which bond shall be further conditioned for the faithful performance of all the terms and conditions and provisions of this ordinance.

"Sec. 5. License fee. A license fee of $10 shall be charged for the issuance of this license which shall be granted for a period of 1 year, but all licenses shall expire April 1st of each year.

"Sec. 6. License to be posted. No person, firm or corporation shall engage in the florist business without first securing a license for each place to be operated and no license issued under this ordinance shall be transferable, nor shall be used by any persons, firm or corporation other than as named in the license and said licensee shall conspicuously display said license in his place of business so that the same is plainly visible to the public.

"Sec. 7. Complaint. When any complaint is made that goods, wares or merchandise sold have not been delivered or have been misrepresented, or the ordinance violated in any way by the said licensee or any person acting in his behalf, it shall be the duty of the commissioner of police or any person authorized by him to make inquiries into the circumstances surrounding such loss, misrepresentation, or violation, and adjust the same and make such recommendation to the mayor with respect to suspension or revocation of such license if such action is warranted by the facts: Provided, That no license shall be suspended or revoked without proper notice to the licensee and hearing provided before the mayor or person authorized by him to conduct the same.

"Sec. 8. Penalty. Any person, firm or corporation who shall violate any of the provisions of this ordinance or shall fail to comply with the same, shall upon conviction thereof, be punished by a fine of not more than $100 or by imprisonment in the Detroit house of correction for a period of not to exceed 90 days or by both such fine and imprisonment in the discretion of the court."

Defendants contend that the ordinance was adopted to curb or eliminate fraudulent practices on the part of irresponsible, itinerant merchants engaged in the business of "doping" flowers and selling them to an unsuspecting public and to prevent flower peddlers from engaging in the florist business without paying personal property tax.

The trial court held the ordinance unconstitutional and found as a fact that there was no evidence to support the claim that the vendors against whom the ordinance was aimed were irresponsible, of fly-by-night character, or that they doped flowers or sold imperfect flowers except at a reduced rate. In our opinion, the record sustains the finding of the trial court.

An examination of the ordinance discloses that it prohibits the sale of cut flowers and potted plants except when the vendor is licensed by the mayor. It does not regulate the sale of cut flowers on the streets of the city of Detroit or the sale by temporary merchants who may rent store premises for short periods during the holiday seasons, except that they must comply with the act.

Citation of authority is unnecessary to establish the proposition that the sale of cut flowers and potted plants is a legitimate business and should remain unhampered by legislative action unless restrictions are required for the protection of the public. Defendants rely upon *Saigh* v. *Common Council of City of Petoskey,* 251 Mich. 77, to sustain their position that the police·power·of the municipality extends to the prohibition and licensing of the business of selling flowers and potted plants if the people may be exposed to misfortunes. In that case it was held that an ordinance prohibiting auction sales of linens, laces, embroideries and other merchandise except by merchants who have been in business in the city for

one year was a legitimate subject of regulation to prevent abuses and frauds. The court said:

"Granting that the business of auctioneering is a lawful and useful one, it is nevertheless a legitimate subject of regulation to prevent abuses and frauds, and the reason for this is that it is everywhere recognized that auction sales of merchandise are attended with greater risk of fraud and loss to the public than sales in the usual way by merchants. *People* v. *Gibbs,* 186 Mich. 127 (Ann. Cas. 1917 B, 830); note 31 A. L. R. 299."

In *Harrigan & Reid Co.* v. *Burton,* 224 Mich. 564 (33 A. L. R. 142), we said:

"Municipal ordinances, though ostensibly enacted as public regulations, which are so framed as to control or regulate a common and useful private business or occupation in life are subject to review and investigation in the courts to determine their validity by the test of whether, under the guise of a police regulation, there is an arbitrary, unreasonable or unwarranted interference with the constitutional rights of the private citizen to pursue a lawful business or calling, and to make contracts with others in relation thereto."

The ordinance is what the trial court said it was, an "unreasonable interference with the rights of citizens to carry on a legitimate business" and "an attempt to stifle competition rather than to enforce reasonable and necessary regulations upon a business that is in need of regulation in order to afford protection to the public." Both the law in this State and the record in this case justify his conclusion.

In *People* v. *Victor,* 287 Mich. 506, 514, it is said:

"While there is a presumption that an act of the legislature is valid, nevertheless, the courts have the power to determine whether, as a matter of fact, the prohibition bears a reasonable relationship to

the public health, safety, morals and general wel-
fare.''

In *Cook Coffee Co.* v. *Flushing,* 267 Mich. 131, 134,
it is said:

''The classification must be based on natural dis-
tinguishing characteristics and must bear a reason-
able relation to the object of the legislation.''

The purpose of the ordinance may be gleaned
from the testimony of defendants' witness Brown:

''We were protecting our business by getting rid
of these people who sold in the streets.  *  *  *
Mother's Day and Easter were the principal days
that they hurt me, but during the week they hurt
them all on those other corners.   That is why the
florists association lobbied this ordinance through.

''It is true that these second-hand flowers were
sold at second-hand prices.   They sold roses at
25 cents a dozen.   I sold them for a dollar and a
dollar and a half.   They were selling second-hand
roses and I was selling first-hand roses.   It is true
that that was just a depression condition.   People
would not buy dollar dozen roses during the depres-
sion as much as when times were good.''

And the witness Lutey who testified:

''There is nothing wrong with selling those im-
perfect roses as bull-heads at reduced prices.   The
object of this ordinance lobbied by my florist com-
mittee was to get rid of those merchants that sold
that type of flower and old flowers.   They were un-
derselling our association of florists.''

The reasoning given in the case of *Chaddock* v.
*Day,* 75 Mich. 527 (4 L. R. A. 809, 13 Am. St. Rep.
468), again seems appropriate; we there said:

''It is quite common in these days for certain
classes of citizens—those engaged in this or that
business—to appeal to the government—national,

State or municipal—to aid them by legislation against another class of citizens engaged in the same business, but in some other way. This class legislation, when indulged in, seldom benefits the general public, but nearly always aids the few for whose benefit it is enacted, not only at the expense of the few against whom it is ostensibly directed, but also at the expense and to the detriment of the many, for whose benefit all legislation should be, in a republican form of government, framed and devised. This kind of legislation should receive no encouragement at the hands of the courts, and be only upheld when it is strictly within the legitimate power of Congress or the State or municipal legislatures.''

The object of the present ordinance was not to protect the citizens of Detroit in their public health, safety, morals or general welfare, but was for the financial benefit of a few. In view of the fact that the selling of flowers and potted plants is a legitimate business, and that there has been no showing made of the existence of any evil in connection with the sale of flowers and potted plants, we are constrained to hold that the ordinance involves the infringement of the right of property or business under the guise of police regulations and is therefore void.

The decree of the trial court is affirmed. No costs will be allowed as a construction of an ordinance is involved.

Butzel, C. J., and Wiest, Bushnell, Potter, Chandler, and North, JJ., concurred with Sharpe, J.

McAllister, J. (*concurring*). In holding this ordinance unconstitutional, I do not believe that the fact that selling flowers on the street is a legitimate business is the criterion necessary to adopt; nor would the fact that the ordinance resulted in de-

stroying competition require us to hold it void. But, indulging in every presumption as to its constitutionality, I cannot see how there could be any reasonable relation between such an ordinance and the safety, health, morals, prosperity, comfort, convenience, or welfare of the public or any substantial part of the public. *Cady* v. *City of Detroit,* 289 Mich. 499. I, therefore, concur in the judgment of affirmance.