# Adams et al. v. Burke.

June 18, 1948.

As Modified on Denial of Rehearing December 10, 1948.

John Wessel and Harlan Heilman for appellants.

William G. Reed for appellee.

OPINION OF THE COURT BY CLAY, COMMISSIONER— Reversing.

This case involves the validity of an ordinance enacted by the city of Carrollton "regulating the opera-

tion of passenger transportation companies'' within its limits. Appellee is engaged in the taxicab business under a certificate of convenience and necessity granted by the Board of Council under the questioned ordinance. Appellant attempted to operate a similar service in the city without obtaining such a certificate. Appellee sought, and was granted, a permanent injunction enjoining appellant from operating a taxicab in Carrollton until such time as he obtained a certificate issued by the proper city authorities.

On February 5, 1941 the Board of Council of Carrollton enacted the ordinance relating to passenger transportation companies. Section 1 provides that no one shall engage in the transportation of persons for hire without obtaining from the Board of Council a ''certificate of necessity.'' The applicant must satisfy the Board that the service proposed is necessary and convenient for the public, and that the same service is not at that time being rendered by any other person. Section 2 provides the Board shall refuse any application unless it is shown existing operations are not sufficient, and the person then holding a certificate refuses to furnish adequate service to take care of the traveling public. There are other provisions not material to this controversy.

The Board refused to grant appellant a certificate. He did, however, on January 12, 1948, obtain a ''permit'' from the state Division of Motor Transportation authorizing him to operate a city cab in Carrollton. It is his contention that this state ''permit'' is sufficient authority for the operation of his business, and the ordinance is void for several reasons.

The principal and we feel the controlling question in the case, is whether or not a city of the fourth class (Carrollton being in that category) has the power, in view of the authority and duties of the Division of Motor Transportation, to regulate the taxicab *business* within its corporate limits by the enactment of an ordinance of this nature.

At the outset it must be conceded that the utilization of streets in the transportation of persons for hire is not an ordinary use to which all members of the public have a common right, but is an extraordinary use subject

to regulation by the *controlling public authority*. 25 Am. Jur., Highways, Section 193; Slusher v. Safety Coach Transit Company, 229 Ky. 731, 17 S. W. 2d 1012, 66 A. L. R. 1378. In the Slusher case we recognized that the use of highways for private gain may be "restrained, prohibited, or conditioned as the legislative power may prescribe." 229 Ky. page 733, 17 S. W. 2d 1013, 66 A. L. R. 1378. See also note in 87 A. L. R. 721.

The rule that the state legislative authority may under its police power restrict, limit, or prohibit the use of highways in the transportation of persons for hire does not necessarily mean that each political subdivision of the state has such right. The solution of the problem must turn upon our statutory provisions covering this subject.

It is fundamental that a city has only such powers as are delegated to it by the state legislature, either expressly or by necessary implication. Allen et al. v. Hollingsworth et al., 246 Ky. 812, 56 S. W. 2d 530; Miller v. City of Georgetown, 301 Ky. 241, 191 S. W. 2d 403. The general powers of a city of the fourth class are itemized under sections 86.110 through 86.170, KRS. Under subsection (1) of section 86.120, KRS, the city council is authorized to "license, tax and regulate, * * * vehicles." Subsection (4) of this same section grants the power to "license and tax, * * * any carrier of passengers or freight for hire within the city."

Under subsection (1), section 94.360, KRS, the legislative body of a fourth class city is granted "exclusive control over the public ways" of the city.

If no other statutory provisions were involved, a delicate question would be presented as to whether or not the above granted powers are sufficiently broad to authorize the enactment of the ordinance here involved. For those interested in this problem, we call attention to the following principles: (1) A person has the constitutional right to engage in a lawful business. Tolliver v. Blizzard, Police Judge, 143 Ky. 773, 137 S. W. 509, 34 L. R. A., N. S., 890; Kresge Co. v. Couzens, Mayor, 290 Mich. 185, 287 N. W. 427, 124 A. L. R. 543. (2) The power to regulate does not authorize the creation of a monopoly, 38 Am. Jur., Municipal Corporations, Section

332. (3) The power to impose a license tax does not authorize one that is prohibitive. Fiscal Court of Owen County v. F. & A. Cox Co.; 132 Ky. 738, 117 S. W. 296, 21 L. R. A., N. S., 83. (4) The right to regulate the use of streets does not necessarily authorize the prohibition of such use. Brachey, Judge, et al. v. Maupin, 277 Ky. 467, 126 S. W. 2d 881, 121 A. L. R. 969. (5) The licensing power of a city should be strictly construed and doubt concerning the existence of a particular power should be resolved against its existence. 38 Am. Jur., Municipal Corporations, Section 324; Allen et al. v. Hollingsworth et al., 246 Ky. 812, 56 S. W. 2d 530.

It is not necessary for us to pass on the power of cities to regulate the taxicab business prior to 1932 when the legislature undertook to deal with this subject on a state wide basis. The original act (273-9L—9 et seq., Carroll's Ky. Statutes) provided for the procurement of a permit by a person, not operating under a certificate of public convenience and necessity, engaged in the motor vehicle transportation of persons for hire on any public highway. The present act was enacted in 1942 and is similar to the original statute.

Section 281.450, KRS, provides that no person (other than a common or contract carrier specifically dealt with elsewhere) shall transport persons for hire on any public highway without having procured from the Division of Motor Transportation "an authorization for such operation." This section requires an application to be filed and detailed information to be furnished. Under section 281.460 the applicant must file with the Director of the Division an indemnity bond or policy of insurance covering public liability for personal injuries or property damage. Compliance with the statute justifies the issuance of an "authorization."

The powers of the Division of Motor Transportation are set out in KRS 286.040, which provides in part:

"The Division of Motor Transportation, headed by a director, shall have and exercise all the functions of the state in relation to the regulation of motor vehicles for hire and of their operation, unless otherwise provided by law."

This division is a section of the Department of Busi-

ness Regulation, concerning which section 286.020, KRS, provides:

"The department shall have and exercise all administrative functions of the state except as otherwise provided by law in relation to: (1) The supervision of motor transportation for hire."

It will thus be seen from the above statutes that the legislature invested the Division of Motor Transportation with the general supervision and regulation of taxicab vehicles and their operation on public highways. Public highways are defined in the act to include city streets. Subsection (10), section 281.010, KRS.

All businesses involving the transportation of persons or property for hire by motor vehicle are subject to supervision and regulation by the Division. The section of the statutes relating to taxicabs is a part of the general law pertaining to common and contract carriers, enacted as Chapter 185 by the 1942 legislature. It is true the legislature did not see fit to impose the same conditions upon the operation of taxicabs as it did for other types of carriers, but this fact itself indicates the legislature did not consider the public safety or welfare demanded a closer supervision of this particular business. The statutes do, however, evidence a general scheme for the regulation of carriers for hire, and such scheme on a state wide basis must supersede city powers of local regulation, at least to the extent of conflict, assuming those powers existed prior to the enactment of the general statute.

We do not think it can be questioned that the legislature may withdraw from municipalities any of their granted powers. See City of Morganfield v. Leo Wathen et al., 202 Ky. 641, 261 S. W. 12. A case particularly in point is that of Chicago Motor Coach Co. v. City of Chicago, 337 Ill. 200, 169 N. E. 22, 66 A. L. R. 834. In that case the Chicago Motor Coach Company was operating in the city of Chicago under a certificate of public convenience and necessity issued by the Public Utilities Commission. The city of Chicago enacted an ordinance requiring the company to obtain a specific grant of authority from the city council to operate. The Illinois Supreme Court held that the city had no power to pro-

hibit the operation on its streets of a common carrier which had obtained a certificate from the state Commission. Deciding that the Commission was given supervision of all public utilities under a general statute, the Court said, 169 N. E. page 26:

"These provisions certainly covered the whole field of service of every utility. They left no room for the exercise of authority of any other body.

"The vesting of the power conferred by this act in the Public Utilities Commission necessarily withdrew from cities and villages all such power as they had previously been authorized to exercise in the premises."

See also Morel v. Railroad Commission of California, 11 Cal. 2d 488, 81 P. 2d 144; Bay Cities Transit Co. v. City of Los Angeles et al., 16 Cal. 2d 772, 108 P. 2d 435; and note in 66 A. L. R. 847.

The governing principle was clearly delineated in the recent case of O'Brien v. Department of Alcoholic Beverage Control et al., 306 Ky. 238, 206 S. W. 2d 941. The City of Lexington, by ordinances passed in 1938 and 1941, had undertaken to limit the number of retail alcoholic beverage licenses to be issued within the city. In 1947 the state Alcoholic Beverage Control Board fixed a larger quota. While recognizing that in the absence of regulation by the state authority a municipality might properly limit the number of licenses to be issued, we determined the Board's action must control. We did so on the ground that the Alcoholic Beverage Control Act is a comprehensive measure, and as a general law it superseded all special charter rights of municipalities to license or control the liquor traffic.

In the present case, as in the O'Brien case just discussed, the legislature has delegated to the Division of Motor Transportation the superior power to. authorize the operation of a taxicab business. We do not undertake to pass upon the wisdom of this policy. Nor do we doubt that the legislature could properly invest municipalities with this control. Yet, under the law as it now stands, this type of regulation rests with the Division of Motor Transportation. Having issued its authorization to appellant permitting him to operate a city cab in Carrollton, this city has no authority to prevent such operation.

Appellee's contention that the statutes giving a municipality exclusive control over its streets justifies the enactment of this ordinance is without merit. It is of course clear that a municipality may reasonably regulate the use of its streets by any vehicles. It may designate what streets shall be used by particular classes of traffic, fix speed limits, set aside parking spaces, and pass other measures designed to protect its streets and provide for the safety of its citizens. Such regulation would constitute true "control over the public ways" which is delegated to city legislative bodies by subsection (1), section 94.360, KRS, earlier referred to.

The distinction between regulating the *use* of streets and defining *who shall operate a business* thereon is clear and vital. This distinction was carefully considered in Bell Bros. Trucking Co., Inc. v. Kelley, Police Judge, 277 Ky. 781, 127 S. W. 2d 831. Therein we recognized that a city could properly designate particular streets and depots which must be used by common carriers, even though they held certificates of convenience and necessity issued by the Division of Motor Transportation. The ordinance in that case did not, however, attempt to impair the right of the carrier to operate through the city in accordance with the provisions of its certificate. In the present case the ordinance goes far beyond regulation or control of the streets and attempts to take away appellant's right to carry on a legitimate business.

It is our conclusion the city of Carrollton did not have power to enact the ordinance herein complained of, and such ordinance is void. It follows the Chancellor improperly enjoined appellant from operating a taxicab for hire in Carrollton until such time as he procured the certificate provided for in that ordinance.

The judgment is reversed for proceedings consistent herewith.

## On Rehearing.

On a petition for rehearing the cities of Louisville and Lexington have filed briefs amicus curiae expressing the fear that our decision destroys their right to regulate the operation of taxicabs upon city streets under local police powers. These cities also maintain the present decision is in conflict with certain holdings in the

case of Beavers et al. v. City of Williamsburg et al., 306 Ky. 201, 206 S. W. 2d 938. Our opinion as now modified cannot be so construed. Local regulation of the operation of taxicabs consistent with a city's police power is not condemned by this decision. The scope and extent of state and local supervision is founded in our statutes, and if cities are in need of greater powers to deal with this problem, the appeal should be directed to our General Assembly.