## Trivette, Police Judge, et al. v. Mullins et al.

December 10, 1948.

Kenneth A. Howe for appellants.

Hinton & Rice and Garred O. Cline for appellees.

OPINION OF THE COURT BY CLAY, COMMISSIONER—Affirming.

This suit was brought by appellee Mullins and others to enjoin the Chief of Police of Pikeville and others from interfering with the use of a private parking lot for the purpose of loading and unloading taxicab passengers. The Chancellor granted the injunction as prayed.

On July 9, 1946, the city council of Pikeville enacted an ordinance which, among other things, undertook to regulate city and county taxicabs. Sections 14 and 15 of the ordinance provided as follows (our italics):

"Section 14. The Chief of Police is hereby authorized and required to establish bus stops and taxicab stands and stands for other passenger common carrier motor vehicles *on such public streets* in such places and in such number as to afford the greatest benefit and convenience to the public, and every such bus stop, taxicab stand or other stand shall be designated by appropriate signs."

"Section 15. It shall be unlawful for any owner or driver of a County taxicab or taxicabs not licensed for operation within the city limits of Pikeville under the provisions of this ordinance to bring passengers into this City from points beyond the City limits and discharge such passengers within said City *except at such*

*place or places that may be designated* by the Chief of Police under the provisions of Section 14 of this ordinance.''

Appellee Mullins was the owner of a county taxicab which operated between Millard and Pikeville under an authorization issued by the state Division of Motor Transportation. In loading and unloading passengers in the City he used a private parking lot owned by appellee Wright, for which he paid Wright a monthly compensation.

In April 1947 Mullins was arrested and convicted on the charge of loading and unloading passengers within the city limits at a place other than that designated by the Chief of Police under the above mentioned ordinance. This suit followed.

There is some controversy as to whether or not the Chief of Police had properly designated and marked by appropriate signs a place on the public streets for taxicab use. It is unnecessary to consider the conflicting evidence on this question if the ordinance could not validly, or did not, forbid the use of a private parking lot for the purpose of loading and unloading taxicab passengers.

Appellants here insist the City has exclusive control over its streets; it has the right to regulate and control the operation of taxicabs on its streets; and the Chief of Police did not act arbitrarily in enforcing the provisions of the ordinance. Assuming appellants' propositions are sound, they do not cover this case.

KRS 94.360 gives to the legislative body of a fourth class city (Pikeville being in this category): ''exclusive control over the public ways, landings, wharves and public grounds of the city.''

Exclusive control of the streets, however, does not carry with it the right to determine who shall conduct a taxicab business within the city limits. Adams et al. v. Burke, 308 Ky. 722, 215 S. W. 2d 531, petition for rehearing this day overruled. A fourth class city may properly designate taxicab stands or places for loading and unloading passengers on its public streets. To say, however, that a taxicab operator may not use private property in carrying on his business is going into an entirely

different field altogether. This departs distinctly from control of public streets and not only attempts unreasonable regulation of the taxicab business but arbitrarily interferes with the enterprise of the parking lot owner. We can see no justification in this case for such restrictions on private business and the use of private property.

In our opinion the ordinance would be clearly unconstitutional if construed as prohibiting the use of private property by taxicabs for loading or unloading passengers. While the language used in Sections 14 and 15 of the ordinance above quoted might justify such interpretation, if possible we should construe the ordinance as constituting a valid exercise of the local legislative power. See 11 Am. Jur., Constitutional Law, Section 97; Kenton & Campbell Benevolent Burial Association v. Quinn et al., 244 Ky. 260, 50 S. W. 2d 554. In doing so we take the view that the true intent and purpose of these sections was to prohibit this particular use of *public* ways or *public* property except as designated. Fairly construed, it does not appear the legislative body of the City intended to accomplish a more comprehensive unconstitutional purpose.

For the reasons stated, the ordinance must be limited in its application so as not to forbid the actions of appellee Mullins or those similarly situated, and the Chancellor properly enjoined further prosecutions under the ordinance on this ground.

The judgment is affirmed.