RENDERED:  JANUARY 22, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0151-MR

JOHNATHAN DAVIS                                             APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE JUDITH MCDONALD-BURKMAN, JUDGE
ACTION NO. 16-CI-003792


NORTON HEALTHCARE, INC.                                     APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, DIXON, AND K. THOMPSON, JUDGES.

DIXON, JUDGE:  Johnathan Davis[1] appeals from the opinion and order granting

summary judgment in favor of Norton Healthcare, Inc. ("Norton") entered on

January 23, 2020, by the Jefferson Circuit Court.  Following a careful review of the

briefs, record, and applicable law, we affirm.

---

[1]  In his notice of appeal, Davis identifies himself as the appellant "on behalf of himself and a
class of similarly situated persons."  However, no class or class representative was ever certified
by the trial court in this purported class action suit.

## FACTS AND PROCEDURAL BACKGROUND

On July 27, 2014, Johnathan Davis was injured in a motor vehicle accident (MVA), following which he sought medical treatment at Norton's Leatherman Spine Center. Davis hired Attorney T. Scott Abell to represent him in the MVA litigation. On November 19, 2015, Abell sent a letter to Norton's medical records custodian requesting a certified copy of Davis's updated medical records and expenses from the Leatherman Spine Center. Abell enclosed an authorization signed by Davis to release protected healthcare information pursuant to the Health Insurance Portability and Accountability Act (HIPAA)[2] and state law. The HIPAA authorization stated, "I hereby authorize the FREE copy of the patient's medical records pursuant to KRS[3] 422.317 be sent." (Emphasis in original) (footnote added). On January 7, 2016, Norton provided Abell a certified copy of Davis's medical records, accompanied by an invoice in the amount of $50 for processing and notary fees of $25 each.

On July 12, 2016, Abell issued payment for the invoice, and less than one month later, on August 10, 2016, he filed the instant lawsuit on behalf of Davis. Davis claims Norton violated KRS 64.300 by charging an excessive notary fee and violated KRS 422.317 by charging a processing fee when he was entitled

---

[2] 45 Code of Federal Regulations (CFR) 164.508; 42 United States Code (U.S.C.) § 1320d-2.

[3] Kentucky Revised Statutes.

to one free copy of his medical records. On September 28, 2016, Norton responded with a motion to dismiss, primarily alleging that Davis lacked standing to sue since he neither requested his medical records nor paid the invoice for them. In October 2016, Davis's wife issued a check to reimburse Abell's payment of Norton's invoice. On March 3, 2017, the trial court entered an order denying Norton's motion to dismiss. The trial court found Davis had standing but made no ruling on whether KRS 64.300 was applicable to the case herein or whether Norton had violated KRS 422.317.

On May 17, 2018, Davis filed an amended complaint, alleging Norton violated the Kentucky Consumer Protection Act (KCPA) contained in KRS Chapter 367, *et seq.*, and seeking a permanent injunction prohibiting such charges in the future. Afterward, Norton moved the trial court for summary judgment. Following full briefing and oral arguments, the trial court granted Norton's motion for summary judgment finding: recovery under KRS 422.317 unavailable due to the voluntary payment doctrine; no privity under the KCPA; KRS 64.300 inapplicable; and injunctive relief moot. This appeal followed.

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

-3-

that the moving party is entitled to a judgment as a matter of law." CR[4] 56.03. An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exists and the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). A grant of summary judgment is reviewed *de novo* because factual findings are not at issue. *Pinkston v. Audubon Area Cmty. Servs., Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006) (citing *Blevins v. Moran*, 12 S.W.3d 698 (Ky. App. 2000)).

## VOLUNTARY PAYMENT RULE

The trial court relied on *City of Morganfield v. Wathen*, 202 Ky. 641, 261 S.W. 12 (1924), and *Causey v. Cohron*, 216 Ky. 164, 287 S.W. 544 (1926)— which it correctly pronounced are still good law—in finding relief unavailable to Davis under the voluntary payment rule. In *Wathen*, Kentucky's highest court held: "Where one pays an illegal demand with full knowledge of all the facts which render the demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention or to prevent an immediate seizure of his person or property, the payment is voluntary." 261 S.W. at 14. In *Causey*, the court held: "One cannot voluntarily become the creditor of another so as to enforce his claim in a court." 287 S.W. at 545. Davis urges our

---

[4] Kentucky Rules of Civil Procedure.

court to abandon these well-settled principles as "antiquated" to follow other jurisdictions which would lead to a different result in the case herein. In this case, we note that it was evident to all parties involved, through actual or constructive knowledge,[5] that the charges should not be permitted under Kentucky law, and there was no duress to pay the invoice (the medical records were provided, and Norton did not pursue payment in the months following issuance of the invoice). Davis's arguments concerning hypothetical harm scenarios in which refusal to pay would place Abell on a "black list" and/or harm his credit are insufficient to create genuine issues of material fact on this issue.[6] Consequently, we decline to depart from Kentucky's voluntary payment doctrine in favor of applying any of the varying approaches used in other jurisdictions.

## CHARGES FOR MEDICAL RECORDS UNDER KRS 422.317

KRS 422.317(1) provides: "Upon a patient's written request, a hospital licensed under KRS Chapter 216B or a health care provider shall provide, without charge to the patient, a copy of the patient's medical record." This statute does permit the hospital or healthcare provider to charge a "copying fee, not to exceed one dollar ($1) per page . . . for furnishing a *second* copy of the patient's

---

[5] Davis claims he has never testified that he knew the charges were illegal; however, it is undisputed that his agent—Attorney Abell—knew these charges were impermissible.

[6] Moreover, these scenarios do not create a real or justiciable controversy as neither did nor could happen herein. *HealthAmerica Corp. of Kentucky v. Humana Health Plan, Inc*., 697 S.W.2d 946, 948 (Ky. 1985).

medical record upon request either by the patient or the patient's attorney or the patient's authorized representative." *Id.* (emphasis added). Davis argues the public policy and purpose behind this statute is to "allow all patients to timely receive a copy of their records, unhindered by the financial ability to pay." Here, although he may have been erroneously billed, Abell received a copy of Davis's medical records without first having to pay for them. This fact alone completely undercuts Davis's argument that the invoice violated public policy.

Nonetheless, the trial court correctly found that, in the absence of a statutory penalty, Davis must pursue his KRS 422.317 claim under KRS 446.070. Another panel of our Court held:

> KRS 446.070 codifies the common-law doctrine of "negligence *per se*" in Kentucky. *Davidson v. American Freightways, Inc*., 25 S.W.3d 94, 99 (Ky. 2000). Negligence *per se* "is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." [*Real Estate Mktg., Inc. v. Franz*, 885 S.W.2d 921, 926-27 (Ky. 1994), *quoting Atherton Condo. Apartment-Owners Ass'n Bd. of Dir.'s v. Blume Dev. Co.*,] 115 Wash.2d 506, 799 P.2d 250 (1990). KRS 446.070 provides an avenue by which a damaged party may sue for a violation of a statutory standard of care if the statute in question provides no inclusive civil remedy and if the party is within the class of persons the statute is intended to protect. *Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky. 2005). It provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." KRS 446.070.

-6-

*Young v. Carran*, 289 S.W.3d 586, 588-89 (Ky. App. 2008). The first element

which must be proven in any negligence claim is the existence of a duty. Here,

like the trial court, we are unaware of any Kentucky cases which indicate such a

duty. A review of cases from the Sixth Circuit also reveals the absence of any

authority imposing such a duty. ("[W]e are unaware of any negligence claim that

could hold [a health care provider] liable for 'overcharging[.]'" *Faber v. Ciox*

*Health, LLC*, 944 F.3d 593, 598 (6th Cir. 2019)). Failure to establish the existence

of a duty is fatal to Davis's claims. Even so, the trial court also alluded that

Norton's conduct was not a substantial factor in causing Davis's damages under

the voluntary payment doctrine. We agree for the reasons discussed above.

**NOTARY FEES UNDER FORMER KRS 64.300**

Norton invoiced Abell on January 7, 2016. This invoice included a

$25 "Notary Public" fee. On July 12, 2016, more than six months later, but absent

further prompting by Norton, Abell issued payment for the full amount of the

invoice. Until July 14, 2016,[7] KRS 64.300(1) stated:

> The fees of notaries public for the following services
> shall be not more than set out in the following schedule:
>
> Every attestation, protestation, or taking acknowledgment
> of any instrument of writing, and certifying the same
> under seal including, but not limited to, the notarization
> of votes of absentee voters                          $0.50

---

[7] 2016 Kentucky Senate Bill 214 proposing the repeal of this statute was introduced on February 22, 2016; enrolled March 29, 2016; and adopted on April 8, 2016.

Recording same in book to be kept for that purpose   0.75

Each notice of protest                                                0.25

Administering oath and certificate thereof            0.20

On July 15, 2016, the repeal of this statute became effective, removing this

maximum schedule.

The statutory definition of a notary public has also been amended

since this action was filed.  Until December 31, 2019, KRS 423.010 defined a

notary public as someone:

> eighteen (18) years of age, a resident of the county from which *he or she* makes his or her application or be principally employed in the county from which *he or she* makes *his or her* application, *of good moral character*, and capable of discharging the duties imposed upon *him or her* by this chapter, and the endorsement of the officer approving the application shall so state.

(Emphasis added).  The trial court found that the use of the phrases "of good moral

character," "he or she," and "him or her" indicate that it was the legislature's intent

that a notary public be an individual, not a corporation.  KRS 423.300(15),

effective January 1, 2020, now defines a notary public as "*an individual*

commissioned to perform a notarial act by the Secretary of State.  This term does

not include other notarial officers who may perform a notarial act in this state[.]"

(Emphasis added).  KRS 423.300(14), effective the same date, defines a notarial

officer as "a notary public or other *individual* authorized to perform a notarial

act[.]" (Emphasis added). Both the current and prior statutory definitions of a notary public describe such as an individual. Norton is not an individual. Thus, it is ineligible to be a notary and is not prevented from making charges in excess of those set forth in former KRS 64.300. Accordingly, the trial court did not err in its decision that Norton did not violate KRS 64.300 because *Norton* is not a notary public.

Davis further alleges that Norton may be liable under KRS 64.300 as part of a concert of action theory. Davis cites *Farmer v. City of Newport*, 748 S.W.2d 162, 164 (Ky. App. 1988), quoting RESTATEMENT (SECOND) OF TORTS, Section 876 (AM. LAW INST. 1979), in support of this argument:

> For harm resulting to a third person from the *tortious* conduct of another, one is subject to liability if he (a) does a *tortious* act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct separately considered, constitutes a breach of duty to the third person.

*Id.* (emphasis added). However, this theory fails for reasons previously discussed herein. For a negligence claim, it is incumbent that Davis establish that Norton owed him a duty. He has failed to do so. Therefore, the trial court correctly dismissed his claim.

## KENTUCKY CONSUMER PROTECTION ACT

The trial court dismissed Davis's KCPA claims due to lack of privity. Claims may only be brought under the KCPA by individuals who *personally* purchase goods or services from a merchant pursuant to KRS 367.220(1), which provides:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170, may bring an action under the Rules of Civil Procedure in the Circuit Court in which the seller or lessor resides or has his principal place of business or is doing business, or in the Circuit Court in which the purchaser or lessee of goods or services resides, or where the transaction in question occurred, to recover actual damages.

Although Davis received medical treatment from the Leatherman Spine Center, there was no privity of contract between Davis and Norton concerning the request for his medical records made by Abell or the payment of the resulting invoice paid by Abell. We are not at liberty to add to, subtract from, or otherwise alter the KCPA to forgo the privity requirement. *See Travelers Indem. Co. v. Reker*, 100 S.W.3d 756, 765 (Ky. 2003). Because Davis failed to establish the required privity of contract with Norton to sustain these claims, the trial court properly disposed of them as a matter of law.

Furthermore, KRS 367.170 states:

(1) Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

(2) For the purposes of this section, unfair shall be construed to mean unconscionable.

Even if privity existed herein, Davis failed to demonstrate that Norton engaged in unconscionable, false, misleading, or deceptive acts—the types of acts from which the KCPA is intended to protect consumers.

> Not every failure to perform a contract is sufficient to trigger application of the [KCPA]. The statute requires some evidence of "unfair, false, misleading or deceptive acts" and does not apply to simple incompetent performance of contractual duties unless some element of intentional or grossly negligent conduct is also present.

*Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 291 (Ky. 1991) (citing *Dare to Be Great, Inc. v. Commonwealth, ex rel. Hancock*, 511 S.W.2d 224 (Ky. 1974)). The evidence presented indicates the allegedly erroneous invoice does not rise to the level of a substantial wrong required by the KCPA. Thus, the trial court did not err in its determination that Norton was entitled to summary judgment on Davis's KCPA claims.

**INJUNCTIVE RELIEF**

The trial court denied Davis's request for injunctive relief as moot because Davis had no viable claims against Norton, citing *Estate of Goodin v.*

-11-

*Knox County, Kentucky*, No. CIV. 12-18-GFVT, 2014 WL 2719816, (E.D. Ky. June 16, 2014). CR 65 governs injunctive relief in Kentucky. Injunctive relief may be granted if it is clearly shown that a party's rights are being, or will be, violated and the party will suffer immediate and irreparable harm. *Norsworthy v. Kentucky Bd. of Med. Licensure*, 330 S.W.3d 58, 62 (Ky. 2009). Because the trial court correctly found that Davis's rights were not violated, it appropriately denied his request for injunctive relief.

## CONCLUSION

Therefore, and for the foregoing reasons, the order entered by the Jefferson Circuit Court is AFFIRMED.

ACREE, JUDGE, CONCURS.

THOMPSON, K., JUDGE, DISSENTS AND FILES SEPARATE OPINION.

THOMPSON, K., JUDGE, DISSENTING: I respectfully dissent. Kentucky Revised Statute (KRS) 422.317(1) provides in relevant part:

> Upon a patient's written request, a hospital licensed under KRS Chapter 216B or a health care provider shall provide, without charge to the patient, a copy of the patient's medical record.

Davis and those similarly situated should be entitled to redress when this mandatory statute is disregarded by their healthcare providers, rather than have justice denied them based on a hyper-technical application of the law.

-12-

When Davis's attorney requested Davis's healthcare records on his behalf, he provided an appropriate authorization form which stated: "I hereby authorize the FREE copy of the patient's medical records pursuant to KRS 422.317 be sent." But rather than receiving a free copy, Abell received a bill which charged him a $25 processing fee and a $25 notary public fee.

When Davis filed this putative class action,[8] he suspected that he was not the only patient (either acting on his own or through an authorized representative) being charged fees for the statutorily mandated one free copy of his medical records in contravention of KRS 422.317. After engaging in discovery, Davis learned from testimony provided by two of Norton's employees, along with Norton's written policies, which took effect on January 1, 2010, that Norton was routinely charging patients and their authorized representatives for records regardless of whether it was the patient's first copy and continued in such a practice until at least a year after this lawsuit was filed.

KRS 422.317 was examined and interpreted in *Eriksen v. Gruner & Simms, PLLC*, 400 S.W.3d 290 (Ky. App. 2013). The Court determined, "in a situation where a patient is requesting their one free copy allowed under KRS 422.317, providers must make a complete copy of the records available in some manner without requiring additional payments of *any* type." *Id.* at 292. It further

---

[8] Davis never moved for certification of the class.

explained "a free copy of the records must be made available to an agent of the patient if the patient expressly so requests. Any other interpretation would mean that an incapacitated patient could face insurmountable obstacles to obtaining his or her medical records." *Id.* at 292-93. In providing this interpretation, the Court stated "[t]he intent of the statute is to ensure that a patient may obtain one copy of his or her medical records without charge." *Id.* at 293. The Court noted that "[p]lacing this minimal burden on health care providers is rationally related to the legislature's objective of ensuring that all patients, including the economically disadvantaged, have free access to one copy of their medical records" and "the state interest in providing medical records to patients outweighs any minor inconvenience to the providers." *Id.* at 294.

While the *Eriksen* decision provided "[w]e also agree that any reasonable expenses incurred by the medical provider in mailing, faxing or otherwise transmitting the records can be charged to the patient[,]" *id.* at 293, I note that the fees that Norton was charging, a processing fee and a notary public fee, were not these sorts of reasonable expenses. Indeed, it appears that Norton understood it was Davis's first copy as he was not charged "[a] copying fee, not to exceed one dollar ($1) per page," as permitted for additional copies pursuant to KRS 422.317(1). And although the copy was apparently mailed out, Davis was not charged the cost of mailing.

-14-

In charging these other fees, Norton appears to have been acting creatively to try to make money off making a copy of Davis's record even though it knew it was his first "free" copy. While I acknowledge there may be some basis for charging for the certification that Davis requested, although not necessarily the amount he was charged,[9] there can be no reasonable reason that anyone should be charged a processing fee for a patient's first free copy. It appears that in contravention of the law as interpreted in *Eriksen,* Norton was trying to charge Davis for its "minor inconvenience."

Norton had a duty to follow the statute and not charge Davis for his first copy of his medical records and is liable to Davis for charging him when it should not have done so. Redress in court should be available where Norton clearly violated the law meant to benefit patients like Davis. While I acknowledge the voluntary payment rule may still be appropriately applied to other situations, I believe it is improper to apply it to allow Norton to blatantly violate a law designed to protect patients.

Unlike other consumer situations where a person can seek out alternative options if unhappy with how the entity does business, when it comes to

---

[9] The majority advances an oddly convoluted argument that Norton can charge a notarization fee in excess of the prior statute because it is not a notary, as it is not an individual. The purpose of KRS 64.300(1) appears to have been to prevent excessive notarization fees, which is stymied if entities can charge excessive fees for notary services which they control.

healthcare records the patient must deal with the entity that holds them. This "monopoly" on Davis's records and the certification of them left him and his counsel subject to Norton's whims.

Although, perhaps, Davis could have gotten Norton to rescind the fees charged to him, this would not have solved the ongoing problem as it related to other patients. If he waited and never paid the fees, according to the majority's decision, he could never challenge the practice unless the matter went to collections, a situation most people seek to avoid. It was reasonable for Davis to pay the improper fee and then challenge its imposition. As Davis gets only one free copy of his records, the situation would not reoccur for him and is the sort of situation which is capable of repetition yet evading review which should be reviewed.

I would have reversed the grant of summary judgment and allowed this lawsuit to proceed and let Davis try to obtain class certification to remedy the situation for all patients who have wrongly been charged for their records. The majority's opinion gives Norton and other entities holding healthcare records permission to continue to violate KRS 422.317 with impunity. The General Assembly's purpose in enacting this law should not be stymied by the court system on a technicality.

Accordingly, I dissent.

BRIEFS FOR APPELLANT:

T. Scott Abell
Joshua T. Rose
Louisville, Kentucky

BRIEF FOR APPELLEE:

V. Brandon McGrath
Jason T. Ams
Rachel A. Washburn
Louisville, Kentucky